1  RALPH LEE WHITE
   2201 E. Eighth Street
2  Stockton, CA 95206
   (209) 271-2466
3  Email : ralphwhite@aol.com

4  In Pro Per

**FILED**

JUN 2 7 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                    DEPUTY CLERK

8          UNITED STATES DISTRICT COURT

9      EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO

10 RALPH LEE WHITE                    )    Case No. 2:19-CV-00913-JAM-EFB
                                      )
11         Plaintiff                  )
                                      )    OPPOSITION TO MOTION TO DISMISS-
12 vs                                 )    MEMORANDUM OF POINTS AND
                                      )    AUTHORITIES
13 CHRISTIAN CLEGG, et.al             )
                                      )    Date:      July 17, 2019
14         Defendants                 )    Time:      10:00AM
                                      )    Courtroom: 8, 13th Floor
15 _____    )    Judge:     Hon. Edmund F. Brennan

16

17                    **BACKGROUND**

18 Plaintiff in pro per Ralph Lee White (hereinafter "Plaintiff") brought this action for declaratory and

19  injunctive relief requesting that this court grant him relief to compel defendants to purge the

20 voter list in San Joaquin County (hereinafter "County") so that plaintiff could actively and efficiently seek

21 to repeal through a ballot measure initiative, an ordinance passed by the City of Stockton  (hereinafter

22 "City") Said ordinance penalizes landowners by means  including liens against  their properties where

23 landowners' tenants have failed to pay for water service provided by a private enterprise, California

24 Water Service, which is neither owned nor controlled by the City of Stockton.  Plaintiff alleges that in

25 order to effectively obtain qualified signatures to place the issue on a ballot ,and because of plaintiff's

26 personal experience, the voter list supplied by the County, and used by the City, for its initiatives and

27 other elections  under its City Charter is flawed and not current and therefore as a result Plaintiff is unable

PLEADING TITLE - 1

to exercise his right as a voter to **effectively** comply with the City Charter and State Elections Code requirements for submission of legally registered voters signatures for said City initiatives. Plaintiff alleges that because of this impropriety regarding the out of date voter list his rights under the U.S. and State Constitutions regarding elections, initiatives and other voter matters have been adversely impacted. Plaintiff seeks to have this Court order all defendants to comply with Federal and State law and purge the appropriate voter list and further enjoin the City from implementing said ordinance to give plaintiff an opportunity to effectively, and without hindrance to his rights as a voter, to gather legal signatures from an up to date voter's list.  Defendant City filed this Motion to Dismiss and thereafter Defendant County of San Joaquin's Registrar of Voters filed a similar motion. Since defendant Secretary of State, hereinafter "SOS" has even later filed its Motion to Dismiss and has set the date for its argument for July 31 ,2019 plaintiff will also respond to the SOS motion by inserting relevant points already discussed herein and add specific arguments to SOS in this Opposition.  Plaintiff will attempt to obtain a stipulation from City and County to abandon the original July 17 date for hearing and consolidate for the July 31 date so as not to cause duplication of effort either by plaintiff or by the court herein.

## ARGUMENT

### The Applicable Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2) a pleading must contain a short and plain statement of what the claim is and the grounds upon which it rests.  In the case of *Bell Alt.Corp, v. Twombly*, 550 U.S. 544 (2007) at page 555 the Supreme Court explained that to survive a motion to dismiss, a complaint must contain sufficient factual matter. which is accepted as true, to state a claim for relief that is plausible on its face. In the case of *Rivell v. Private Health Care Systems* 520 F. 3d. 1308, 1309 citing from other cases therein it is stated that this rule from the *Twomby* case does not "impose a probability requirement at the pleading stage" It further held that the standard "simply calls for enough facts that are suggestive enough to render {the element} plausible". See *also F.T.C. v. 1st Guar. Mortg. Corp.No.* 09–61840–CIV–SEITZ,2011 W.L. 1226213, at *2(S.D. Fla. March 30,2011) ("Dismissal is only appropriate where the

PLEADING TITLE - 2

plaintiff's factual allegations do not 'raise a right to relief above a speculative level'").  In addition, a Motion to Dismiss under Rule 12(b)(6) should *only* be granted if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle it to relief. *Conley v. Gibson* 335 U.S. 41, 48 (1957). A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. See *Twomby* at page 570.

1. **Plaintiff's Claim Against the City and County State is Plausible and not Speculative as alleged and therefore Plaintiff's Complaint Should not be Dismissed**

Defendants City and County and SOS each state in essence that Plaintiff does not allege that he has made any attempt to acquire any petition signatures to make his determination that there are problems with the voter registration list, a document the City and the City Clerk rely on to validate signatures for a ballot measure.  County and City and SOS allege that Plaintiff makes conclusory allegations, that he has not identified any injury that is not speculative and that there is no factual basis to support his claims. Plaintiff did however, submit certain evidence he acquired recently showing such inaccuracies attached to his complaint herein. Also, he in fact filed with the City Clerk just last year Charter Amendment documentation required by the City Charter. He also filed a Notice of Intention to Recall a councilmember at approximately the same time last year. He discovered improprieties and inconsistencies as he canvassed areas in Stockton to obtain valid signatures. This is when plaintiff discovered the discrepancies in the voter registration lists. Plaintiff attaches hereto as **Exhibit A** copies of his Notice of Intent to Circulate these petitions that  the City  received last year along with required publication in a local newspaper establishing that in fact he did pursue  these constitutional actions and that his allegations in this matter are not just based on speculation or mere conclusions but in actuality led him to discover that there were improprieties in registration forcing him to eventually seek redress from this Court.   For City to allege at page 3 **lines 4-9** of its motion herein and for County to similarly allege at **page 5 lines 2-8** and SOS at **page 7** that Plaintiff has no viable evidence of inaccuracies in the voter list is not tenable. Further, defendants' arguments that plaintiff has suffered no injury as a voter in this matter is untenable

PLEADING TITLE - 3

1   since as discussed below the City Charter confers on the voters of Stockton the powers of initiative and

2   referendum. If there are improprieties in the process a voter has a right to pursue, is not that voter

3   deprived of the power he or she has been given by law whether such is conferred at the Federal, state or

4   local level? Why would Plaintiff attempt to gather signatures for his current effort to repeal the ordinance

5   which is the subject of this action when he already was aware based on his efforts that the voter list was

6   defective and obviously out of date? This is not speculation as the City and County and SOS allege but is

7   based on evidence observed and accumulated by Plaintiff and therefore that which he can testify to as a

8   witness.  As can be seen from the documentation attached for the Charter Amendment and recall petition

9   filed last year, plaintiff's complaint, the allegations of which are taken as true, on this issue exceeds the

10   requirements of Federal law by pleading sufficient facts therein. They are based on personal not

11   speculative information.  Plaintiff relies on the State of California and the County of San Joaquin to have

12   up to date voter lists. He further relies on the City of Stockton to assure compliance as voters must rely on

13   the City Clerk as the local election official, to make  certain that City voters efforts in trying to meet the

14   ballot measures requirements set forth in the City Charter are capable of attaining their goal and right

15   without significant hindrance in the process. . Plaintiff is not seeking an advisory opinion from this Court

16   as alleged by County. Rather he is seeking to have his rights redressed under the Federal and State

17   Constitutions and the Stockton City Charter because of his difficult and burdensome task in pursuing such

18   rights as a voter primarily because of the difficulty in identifying valid registrants. At what point do the

19   safeguards in these laws change from jurisdiction to jurisdiction? If the City relies on a voter list from the

20   County which is required under state law to be accurate and up to date  which stems from a requirement

21   under federal law to have such accurate accounting of qualified voters, how is it that there can be made

22   herein a distinction, as alleged by City and County and SOS, between a voter for federal or state elections

23   or initiatives etc, and a voters rights under local law?  That makes no sense. Is not the voter list required

24   to be updated by the State of California in conjunction with the County of San Joaquin, pursuant to the

25   NVRA  the exact same voter list that is utilized by the City of Stockton to check valid signatures and

26   

27   

28   PLEADING TITLE - 4

registrants and which is relied upon by Plaintiff or others in Stockton an attempt to carry out his right as a voter to seek redress through the ballot initiative or referendum process.? In other words, while all defendants argue that the NVRA only applies to Federal Elections does not the operative effect of the NVRA flow all the way down to the local level? If there is some other voter list that is utilized by the SOS or the County or the City Plaintiff would like to know about that. Further, plaintiff is seeking declaratory relief and injunctive relief. He is not seeking damages. Rather he is requesting this court order the SOS and County to purge existing voter lists so that he can lawfully pursue the mentioned repeal of the ordinance in question since his efforts to so pursue ballot measure have been seriously hindered by inaction of the government in keeping up to date lists. Plaintiff in his complaint has alleged sufficient information that he has been hindered in past efforts to exercise the powers granted him not only by state law and the Stockton City Charter but by the safeguards for all voters under the U.S. Constitution. While his "injury" is alleged by the City and County to be prospective, in fact it is continuing as well as anticipated if plaintiff has not been able to and cannot pursue his voter rights because of failures of the government to do what is required under Federal and State law. As such Plaintiff **has and will suffer** a cognizable injury as a voter whose right it is to pursue the mentioned repeal of the ordinance in question which but for the inaction of the governments' lack of action to correct and update voter lists his rights would not have been impaired under Federal, State and local law. Plaintiff has suffered a cognizable and particularized injury as discussed above. It is traceable to all defendants in this matter and this court is in a position to order the purging of the voter list in question and order the ordinance be placed in abeyance until such is accomplished so plaintiff may pursue his rights under the law. This therefore meets the requirements under Article III.

 **It would appear that if there is no ruling as of yet by the courts that the NVRA requirements mandated to the States do have an effect on even local elections** then this court is in a position to clear up any confusion that has arisen as a result of Plaintiff's complaint.

 **2.  City of Stockton is Inextricably Tied to Federal and State Law Regarding Purging of List**

PLEADING TITLE - 5

1   The City alleges at **page 3 lines 11-22** that there is no legal authority to ensure compliance with Federal

2   or State law regarding the mandatory obligations thereunder to purge voter lists. While California

3   Elections Codes 2400 et. seq. provides guidelines for the implementation of voter registration as required

4   of states under the NVRA plaintiff argues that because of the City's standing as a Charter City it does

5   have an obligation to ensure that voter registration is accurate since it has promulgated its own rules for

6   initiatives and referendum ballot measures etc. under its Charter. Specifically, under *Article IX section*

7   *900* regarding Initiatives and Referendums the language states *"There is hereby reserved to the voters of*

8   *the City the powers of initiative and referendum. The provisions of the Elections Code of the State of*

9   *California, as they now exist or may hereafter be amended, governing the initiative and referendum in*

10  *cities, shall apply to the use thereof in the City so far as they are not in conflict with the provisions of*

11  *this Charter"*. Thereafter, in following sections of the Charter, the City itself sets forth its own specific

12  requirements to obtain signatures of qualified voters.   This departure from state law is given to Charter

13  cities by virtue of *Article 2, Section 11(a)* of the California Constitution under the "home rule" concept.

14  The City of Stockton has its own rules regarding these specific elections. But as a Charter City it is not

15  immune from the requirements of the California Voting Rights Act (CVRA) California Elections Code

16  Sections 14025-14032 see *Jaurequi v. City of Palmdale (2014) 226 Cal.App. 4th 781, a statewide*

17  *concern795-802*. Of course, the *CVRA* was instituted in part because of a statewide concern as it

18  implicated the constitutional rights to vote and equal protection as well as electoral integrity. *Jaurequi at*

19  *798-801*. There is no distinction in the law, and there cannot be, between compliance with these U.S.

20  Constitutional safeguards and the State Constitution and therefore the City of Stockton is bound thereby.

21  So, while the City of Stockton is free to promulgate its own rules regarding local elections and ballot

22  measures as indicated above it must also be mindful of its obligations, not fail to protect the powers it has

23  granted city voters and not abridge the rights of local voters on local issues since its own charter states

24  that the power of initiative and referendum  is "reserved to the voters of the City..". For the protection of

25  all voters in the City their rights established by the Constitutions, including their right to redress potential

PLEADING TITLE - 6

grievances through the local initiative process should be protected by a charter city which sets forth such voting process. Since the City Clerk, as its election official, must validate the signatures submitted through the process it cannot now say it has no such obligation to follow the obvious protections of the law regarding local voters if their rights may be negatively impacted by the same rules that govern voter protection throughout the entire United States. Logic dictates that the City (as well as the County and State) not only have an obligation under both State and Federal but in actuality the City should join Plaintiff in his effort to engage in constitutionally protected activity much of which is dictated by the City's Charter itself. While State law might not specifically designate the City Clerk as its election official its interaction with the San Joaquin Registrar of Voters on local City elections should be more than just standing idly by and stating that it has no obligation as it has done in this Motion to Dismiss.

**3. Plaintiff Did Not Violate the Notice Requirement under the NVRA: and the Secretary of State has Settled the Matter regarding Purging Lists and is on Statewide Notice**

Defendants City, County and SOS allege that Plaintiff did not comply with the 90day notice requirement under 52 USC Section 20510 with respect to it. (See page 3 lines 23-28 and page 7 line1 through page 8 lines2).

As explained in plaintiff's meet and confer letter to the City dated June 4, 2019 and attached to Defendant City's Motion to Dismiss the provisions of 52 USC 20510 (b) does not make the notice provision mandatory. Subsection (1) thereof indicates that an aggrieved person" **may"** provide written notice of a violation to the chief election officer of the state. The language therein is permissive and not mandatory and the City Clerk is **not the chief election officer of the state.** Further, as indicated in Plaintiff's complaint the Secretary of State for California (SOS)has been put on actual and effective notice that there exists a problem with the lack of purging of voters lists in the entire state of California pursuant to the lawsuit filed in December 2017and settlement reached in the *Judicial Watch et.al. v, Dean Logan et.al. case 2:17-CV 09848 filed in the United States District Court-Central District-Western Division.* The reason in any event for the 90day notice requirement is to give defendants an opportunity to cure

PLEADING TITLE - 7

violations  The Secretary  for the State of California has in fact been put on statewide notice because of the recent Judicial Watch case and it has been determined that as part of the settlement the **Secretary of State Alex Padilla has agreed to alert all counties to update the entire online NVRA manual to make clear that ineligible names must be removed and to notify each California county that  they are obligated to do this to lead to cleaner voter rolls statewide.** Further, it is plaintiff's understanding that as a result of this settlement the SOS, in addition to an agreement to notify all California counties of the problems with voter lists, has already provided a training presentation to all 58 counties regarding proper list maintenance. Apparently, in the Judicial Watch matter it was discovered that the State of California has not been in compliance with the mandatory requirements of the NVRA for over 20 years. Plaintiff requests and hopes that this court will obtain a copy of the settlement between the Secretary of State and *Judicial Watch* for its review.

Therefore, that while some federal courts have determined that the 90 day notice requirement is mandatory the fact that the State of California  has been made aware of the violations and has agreed to clean up the voter rolls as required by Federal and State law this should be adequate to meet the intent of the NVRA regarding the notice requirement. The state and presumably all counties therein, if Alex Padilla follows through with his obligations under the settlement agreement in the *Judicial Watch* case, should have more than adequate notice already.  Surely, if Plaintiff were to have given notice it would not inform the SOS and the County of nothing more than they were well aware of. Plaintiff still however believes that the notice requirement is permissive and not mandatory contrary to what is stated by defendants and further since the City Clerk for Stockton is not the state election official he need not be notified. It's pretty easy for the City, or any defendant for  that matter to say Plaintiff's complaint is not viable because of the notice requirement but Plaintiff has been dealing with this ineligible voter list problem himself for quite a while now as indicated even in the complaint itself but he and other proponents of the ballot measure who wish to place the issue  in front of the voters must then take a back seat to whatever timelines the State and the counties set for the purging process effectively

PLEADING TITLE - 8

disenfranchising and delaying Plaintiff and other voters of their opportunity and right to vote on an

ordinance which is new and immediately affects anyone in the city who has rental properties.  If plaintiff

and others cannot get this measure on the ballot in a timely manner, rental properties may be forced to

raise all rents to cover the costs of tenants' delinquent water bills or have potentially illegal liens place on

their properties by the city for a bill owed to a private service provider.  The court should note that this

has been an ongoing problem for plaintiff.  As can be seen from both plaintiff's complaint and from his

attached Exhibit A herein Plaintiff has faced this issue more than once recently and experienced

improprieties with the voter list as he attempted to place these issues on the ballot. Now in addition he

plans to pursue the repeal of this new ordinance and knows he will face the same challenge which

generated his need to pursue a purging of the voter list. It's clear even from the Motions to Dismiss filed

herein by the City and County and SOS that, in the guise of a legal argument these entities would not

have done anything but for the *Judicial Watch* case mentioned above and the action of plaintiff herein.

Time is of the essence here since the problem is ongoing, as it also might be in other jurisdictions where a

voters' right to redress through the local initiative process will be delayed or negatively impacted by

defective voter lists **they cannot rely on**. As discussed, the *Judicial Watch* case has uncovered issues

with the entire State which led the Secretary of State to agree to notify every county to comply with the

NVRA via settlement with Judicial Watch. While it is alleged that plaintiff's complaint is untimely

because a Federal election does not occur until 288 days from the date of the complaint (see County's

Motion to Dismiss at page 13 lines 9-21) defendants fail to advise this court that the Stockton City

Charter (Article IX Section 902} must call for a Special Election within time frames set by the Charter

for initiatives which does not coincide with any Federal Election .(see a copy of Article IX section 902

attached hereto). Plaintiff therefore alleges that the time frames set forth in the NVRA regarding notice

cannot be applicable in this case because of these special Charter provisions. It makes no sense that

plaintiff would have to wait to exercise his constitutional rights as a voter in the City of Stockton to

coincide with a federal election when the Charter mandates an **immediate** special election to be held to

PLEADING TITLE - 9

1   within time frames set by the state Elections Code. Plaintiff refers the court to *California Elections Code*

2   *sections 9200 et. seq.* and California Elections Code section 1405.which sets for the criteria for municipal

3   initiatives and the timeframes for having the election   The timeline therein does not coincide with Federal

4   elections but requires action by the City in conjunction with the County to place the initiative on the

5   ballot within certain time frames. Thus, Plaintiff's obligation here is set forth by the City Charter and

6   State law. It is an arduous process to comply with the City Charter and State law respecting Ballot

7   measures. In addition the provisions of the state election code section 9210 also require the City Clerk to

8   utilize the voter list provided by the County Registrar of voters to validate that the proper signatures are

9   obtained by the petitioner for the ballot measure,  If the voter lists are not up to date and are deficient then

10  the burden on the plaintiff or any other petitioner of a ballot measure becomes overwhelming  to meet the

11  compliance standards for the ballot. Who then is most affected by the failure of this state and local

12  election officials to clean up the problems with the voter list and make sure the it is current and accurate?

13  Does the fact that a jurisdiction has not been given actual notice to correct the problem {when they are

14  already aware of it} really outweigh voters' constitutional right to redress grievances through special

15  provisions of the Charter and state law for ballot measures or other election processes?

16      **4.   County's Argument that Plaintiff is not a Person Protected by the NVRA is Misplaced**

17  County has alleged that plaintiff, because he seeks a referendum initiative is not a protected person under

18  the NVRA. Plaintiff will presume that County also is setting forth that proposition for similar state law

19  passed to comply with the NVRA. County alleges plaintiff is not a person harmed by violation of the

20  NVRA.  It is hard to imagine that County would even set forth that proposition in light of what plaintiff

21  has experienced over the past year and what he is lawfully trying to accomplish. The NVRA actually has

22  two goals. One is to increase opportunities for eligible voters to register to vote. The other however, is to

23  **protect the integrity of elections by requiring states to maintain accurate and current voter**

24  **registration rolls through list maintenance.**  These are goals specifically set forth not only by the

25  NVRA as referred to in the SOS motion to dismiss at **page 10 lines 5-12** but by  the California Secretary

PLEADING TITLE - 10

of State's own website *www.sos.ca.gov/voter-registration/nvra* . So, when one speaks of protecting the

integrity of elections does that not include local elections including initiatives, referendums, recalls and

the like? Or does a local initiative, which is dependent on a complicated voting process by qualified

voters not qualify for the same protections afforded other state and federal elections or initiatives? If a

voter is aggrieved because the state or county has not done its job under the law how can one say that

plaintiff, who is a qualified voter, is not protected by the very law that the government is obligated to

ensure the integrity of ? These protections therefore are not just meant to aid people in getting registered,

they are also in place to ensure that the voting process at whatever level (not just for Federal officers)

does not negatively impact all voters at any level who are trying to carry out their rights to vote either by

election or through the initiative or referendum process without concern for registration improprieties or

even voter fraud as a result of such improprieties... The county and the city cannot ignore this obligation.

5. **County's Argument that Plaintiff Must Wait Until the Presidential Primary in March 2020 is Misplaced**

County argues that the County Registrar of Voters does not have to conduct purging of the voter list until

December 4, 2019 or August 5, 2020, as the case may be, and therefore Plaintiff must wait until possibly

November 2020 to pursue his intended action as a result. (page 11 line15 to page 12 line2) Actually the

law stated by the County thereat from the NVRA states that the state elections official complete removal

**not later than 90 days** prior to a primary or general election for Federal office. This language is

definitive as to the **latest** time such action must be taken to purge the voter list but there is no prohibition

to have such accomplished **before** those deadlines. To say then that Plaintiff lacks standing because his

case is not ripe for adjudication is unfounded. The court, plaintiff believes, has the authority to order the

County of San Joaquin to not wait to begin the purging process to address plaintiff's rights to pursue a

ballot measure, which as discussed above has time constraints and requirements set forth by both the City

Charter and the State Elections code. When the equities are balanced here do plaintiff's rights to pursue

PLEADING TITLE - 11

1    this ballot measure and its stringent timelines and requirements take a back seat to County's desire to

2    prolong the purging process to the detriment of plaintiff's rights and obligations?

3        **6.   The City Clerk is a Properly Named Party Herein and Should not Be Dismissed**

4    The City alleges in its Motion to Dismiss that the City Clerk is not a proper party since naming him is the

5    same as naming the City. First of all, the City Clerk is named in his official capacity as the election

6    official for the City of Stockton, (see Article XIV section1400 (f) of the City Charter attached with

7    Exhibit A). As the election official the City Clerk has specific obligations under the Charter and state law

8    to carry out the functions of election processes for the City including determining the propriety of

9    signatures on petitions for ballot measures from voter lists provided by the County and review and

10   determine other requirements set forth by the Charter and State Elections Code as set forth above. It is not

11   improper when seeking this type of non-monetary relief to name a government official in his or her

12   official capacity As such if this court were to issue any order to the City with respect to the ballot measure

13   it should be directed to the City Clerk as the election official for the City.

14   In addition to the above, Plaintiff alleges that because he is not seeking damages but non-monetary relief

15   in the form of declaratory and injunctive relief naming the City Clerk in his official capacity is proper.

16   Although the city or state for that matter may claim sovereign immunity under the 11th amendment to the

17   Constitution. this would not prohibit a court from issuing an injunction against a government official who

18   may be violating federal law. *Ex Parte Young* , 208 U.S. 123 (1908). In the Young case the court held that

19   if the action is against such an official in his/her official capacity for prospective relief  i.e. relief

20   "necessary to halt an ongoing violation of federal law" and related ancillary relief then naming the official

21   in his/her official capacity is not improper.

22   Here, since the complaint is not seeking money damages against the City Clerk or any other election

23   official if the court so chooses to issue an order regarding the purging process to the City Clerk or other

24   election official regarding the thrust of this lawsuit the court would need a person to carry out that order

25   and possibly be subject to contempt for failure to do so.  With respect to enjoining the ordinance in

26   PLEADING TITLE - 12

1  question until a viable voter list is provided then the City itself would be a proper party since it would

2  take Council action to carry out the court's order.

3  **CONCLUSION**

4  Plaintiff believes that the complaint that he has filed should not be dismissed for the reasons stated above.

5  Simply stated, this matter involves a failure stemming from Federal law to purge voter lists required by

6  the NVRA which is obligatory on most every state including California. While the Secretary of State and

7  the San Joaquin County Registrar of voters have responsibility to accomplish this plaintiff believes the

8  City also has responsibility to ensure voters rights in the city are protected so that such voter can carry out

9  the mandates set forth in the City Charter. Stockton is a charter city and as such can promulgate under the

10  home rule doctrine certain regulations that a general law city cannot. This the City has done through its

11  charter and specifically with respect to the initiative and referendum process wherein it has conferred on

12  the voters of the city the powers thereto. Plaintiff alleges that the City, the County and the State must

13  ensure that such power given to the voters is not abrogated in any way. There is a logical nexus between

14  the requirements of the NVRA leading to legal obligations of the State of California, the County of San

15  Joaquin and even the City of Stockton to ensure the propriety of the voting process even for a voter

16  seeking to lawfully comply with a local ballot measure process. To argue otherwise would be to allege

17  that Plaintiff or any other voter in this country has no protection afforded him/her against improprieties by

18  these entities which affect an individual's rights protected by via the U.S. Constitution and state and local

19  law. Plaintiff has set forth sufficient facts to show he has been adversely affected by the inaction of

20  defendants because of their respective inaction to ensure that voter lists are current, not only for federal

21  elections but for any election process available at any government level. Apparently, this is and has been

22  a statewide problem for many years exposed in the *Judicial Watch* case which was settled by the State of

23  California for the reasons stated above.  Plaintiff should not have to wait until sometime in March or

24  November of 2020 as is alleged in order to pursue his right to place an important ballot measure before

25  the voters in the city. The timelines are different than those for federal elections and his rights thereto and

PLEADING TITLE - 13

the rights of city voters should not be delayed and outweighed by defendants' positions taken in their Motions to Dismiss.in this matter. California Elections Code Sec. 9237 propounded by defendants is not a remedy for plaintiff since it still requires the use of voter lists to accomplish its goals.  Clearly, if there is action being taken to purge voter lists by the State then this should be made known to Plaintiff. Plaintiff is agreeable to wait for the purging in San Joaquin County if the City would voluntarily suspend action on the ordinance in question until the purge process is complete. If, however, the court determines that process is not underway Plaintiff asks this court to set deadlines, at least for the County of San Joaquin so that Plaintiff may pursue the remedies as a voter pursuant to law and order  suspension of the ordinance in question to give plaintiff his opportunity as a voter to comply with all ballot measure requirements pursuant to the City Charter and State law.

Dated: June 26 2019

RALPH LEE WHITE

IN PRO PER

**TABLE OF AUTHORITIES**

**CASES**

PLEADING TITLE - 14

Opposition to Motion to Dismiss

*Rivell v. Private Health Care Systems* 520 F.3d 1308, 1309………………………………. 2

*F.T.C. v. 1st Guaranty Mortgage Corp*. No. 09-61840-CIV-SEITZ-2011 W.L.

1226213 at*2 (S.D. Fla. March 30, (2011)……………………………………………….2

*Conley v. Gibson* 335 U.S.41, 48 (1957)……………………………………………….  2

*Jauregui v. City of Palmdale* (2014) 226 Cal.App.4th 781, 798-801………………………….6, 13

*Judicial Watch et.al. v. Dean Logan et al.* case 2:17 CV 09848 U.S. District Court

Central District-Western Division……………………………………………… 7, 8, 12

*Ex Parte Young* 208 U.S. 123 (1908)……………………………………………… 11

### STATUTE AND CODES

*Stockton City Charter Article IX sec. 900-902*……………………………………………5, 8

*Stockton City Charter Article XIV sec, 1400(f)*…………………………………………………11

*FRCP 8(a)(2)*…………………………………………………………………………….2

*FCRP 12(b) (6)*………………………………………………………………………….2

*52 U.S.C. 20510(b)*………………………………………………………………………….6

*California Elections Code sec 9200 -9226. 9237*……………………………………………… 8

*California Elections Code sec. 14025-14032 California Voting Rights Act (CVRA)*…………………….7

*California Constitution Art. 2 Sec. 11(a)*……………………………………………………….5

### OTHER REFERENCES

*California Secretary of State Website www.sos.gov/voter-registration-nvra*……………………………9

PLEADING TITLE - 15

# EXHIBIT A

## THE RECORD
## PROOF OF PUBLICATION

STATE OF CALIFORNIA
COUNTY OF SAN JOAQUIN

THE UNDERSIGNED SAYS:

I am a citizen of the United States and a resident of San Joaquin County; I am over the age of 18 years and not a part to or interested in the above-entitled matter. I am the principal clerk of the printer of THE RECORD, a newspaper of general publication, printed and published daily in the City of Stockton, County of San Joaquin by the Superior Court of the County of San Joaquin, State of California, under the date of February 26, 1952, File No. 52857, San Joaquin County Records; that the notice of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published each regular and entire issue of said newspaper and not in any supplement thereof on the following dates,
To wit,

May 07 2018

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 7, 2018 In Stockton California



Delailah Little,
The Record

0001118787

---

### NOTICE OF INTENT TO CIRCULATE PETITION

Notice is hereby given by the persons whose names appear herein of their intention to circulate a petition within the City of Stockton, California for the purpose of amending the Stockton City Charter to require that the City Manager, City Attorney, Chief of Police and City Clerk heretofore become elected officers responsible to the citizens of Stockton directly and that their base salaries be consistent with the salaries of comparable state officials.

The reason for the proper action as contemplated in this petition are as follows:
1. This City recently went through an embarrassing bankruptcy likely the result of mismanagement.
2. Currently the City Council appoints the City Manager, City Attorney and City Clerk, and the City Manager appoints the Police Chief all of whom are beholden to the City Council and its politics and not to the citizens. It's time these appointed officials be both free from the council's politics and directly accountable to the citizens.
3. Regardless of the bankruptcy, these city officials' **salaries are at all-time highs** and even exceed the annual base salaries of comparable state officials. For example:
**Governor of California: $195,803**
  **Stockton City Manager: $259,488**
   **with benefits approximately $345,000**
**State Attorney General: $158,775**
  **Stockton City Attorney: $221,646**
   **with benefits approximately $294,000**
**Secretary of State: $130,490**
  **Stockton City Clerk: $134,832**
   **with benefits approximately $179,000**
4. Therefore, it is the intent of this Charter Amendment to accomplish the following:
a. The positions of City Manager, City Attorney, City Clerk and Chief of Police shall become elected positions for a term of four (4) year years each.
b. That the salaries of these public officials be controlled as follows:
 i. The City Manager's annual base salary be **no more than that of the governor of this state***
 ii. The City Attorney's base annual salary be **no more than that of the State Attorney General**
 iii. The Chief of Police's base annual salary be **no more than $146,852.00 or 75% of the City Manager's base salary**
 iv. The City Clerk's base annual salary be **no more than that of the Secretary of the State of California**
 v. Salaries adjusted concurrent with state officials' salaries
 vi. The elections of each official mentioned herein shall take place beginning the year following the passing of this measure and shall assume office January 1 of the year following said election.
 vii. The elections herein shall be city-wide and subject to the similar provisions as the election of the Mayor but with no limitation on terms.
 viii. Each person who qualifies as a candidate herein shall be a resident of this City no less than thirty (30) days prior to the date of the election.
 ix. The City Manager candidates shall have at least ten (10) years of experience as an assistant, deputy or department head in a governmental agency.
 x. A candidate for City Attorney shall have at least ten (10) years of experience as an attorney and be licensed to practice law in this State
 xi. Any candidate for Police Chief shall have reached at least the level of Lieutenant or the equivalent in any local, state or federal agency
 xii. Any candidate for City Clerk shall have a minimum of five (5) years experience as a manager or supervisor in an administrative position in any local, state, or federal agency.
c. If any section, subsection, sentence, clause or phrase of this Measure is for any reason held to be invalid or unconstitutional by decision of any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of the Measure. The voters hereby declare that they would have passed this Measure and each section, subsection, clause or phrase thereof irrespective of the fact that one or more other sections, subsections, clauses or phrases may be declared invalid or unconstitutional. The provisions herein shall supercede inconsistent provisions of the current charter.
Proponent's Name: Jerome Clay
Signed by: Jerome Clay
Proponent's Address: 4143 Riverbrook Ct., Stockton, CA 95219
### Ballot Title
A MEASURE TO PROVIDE FOR THE NOMINATION AND ELECTION BY THE QUALIFIED ELECTORS OF THE CITY OF THE STOCKTON THE CITY MANAGER, CITY ATTORNEY, CITY CLERK, AND CHIEF OF POLICE FOR THE CITY OF STOCKTON AND TO FIX THE SALARIES FOR THOSE OFFICES
### Ballot Summary
The measure would amend the Stockton Charter to provide for the nomination and election of the City Manager, City Attorney, City Clerk, and Chief of Police by the qualified electors of the City of Stockton in the same manner that the Mayor is elected, to serve four (4) year terms, beginning on January 1, 2020. The Measure would not apply term limits to the City Manager, City Attorney, City Clerk, or Chief of Police.
The measure would amend the Stockton Charter to require that the City Manager, City Attorney, City Clerk, and Chief of Police be residents and qualified electors of the City of Stockton.
The measure would amend the Stockton Charter to apply the recall process applicable to the Mayor, to the City Manager, City Attorney, City Clerk, and Chief of Police and would provide for temporary City Council appointments to these offices upon recall or other vacancy.
The measure would amend the Stockton Charter to require that City Manager candidates shall have at least ten (10) years of experience as an assistant, deputy, or department head in a government agency; would require that candidates for City Attorney be an attorney licensed in California with at least ten (10) years of experience; would require the candidates for City Clerk have at least five (5) years of experience as a manager or supervisor in an administrative position in any local, state, or federal agency and the candidates for Chief of Police shall have reached at least the rank of Lieutenant or the equivalent in any local, state, or federal agency in the United States.

---

**When recorded mail to:**

Barbara Jackson
2230 S Harrison St
Stockton, CA 952063013



APR 25 '18 PM 3:41

Above Space for Recorder's Use

## THE RECORD
## PROOF OF PUBLICATION

STATE OF CALIFORNIA
COUNTY OF SAN JOAQUIN

THE UNDERSIGNED SAYS:

I am a citizen of the United States and a resident of San Joaquin County; I am over the age of 18 years and not a part to or interested in the above-entitled matter. I am the principal clerk of the printer of THE RECORD, a newspaper of general publication, printed and published daily in the City of Stockton, County of San Joaquin by the Superior Court of the County of San Joaquin, State of California, under the date of February 26, 1952, File No. 52857, San Joaquin County Records; that the notice of which the annexed is a printed copy (set in type not smaller than nonpareil), has been published each regular and entire issue of said newspaper and not in any supplement thereof on the following dates,
To wit,

April 19 2018

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 19, 2018 In Stockton California

Delailah Little,
The Record

0001118231

### NOTICE OF INTENTION TO CIRCULATE RECALL PETITION

TO THE HONORABLE Jesus Munguia Andrade: Pursuant to Section 11020, California Elections Code, the undersigned registered qualified voters of the City of Stockton, in the State of California, hereby give notice that we are the proponents of a recall petition and that we intend to seek your recall and removal from the office of City Council District 6, in Stockton, California, and to demand election of a successor in that office.

The grounds for recall are as follows:

We, the residents of Stockton who deserve responsible representation, do hereby intend to recall Jesus Munguia Andrade, who has and continues to vote in support of decisions that waste city money and resources. Mr. Andrade has neglected basic city services such as parks, pools, street maintenance, and other needs. He has neglected public safety resulting in an increase in violent crime; and even voted for the proposal to pay suspected violent criminals $500 a month. He neglected homelessness, which has increased 12%. Mr. Andrade misled voters claiming he was a "business owner" causing him to be fined by the Fair Political Practice Commission. He has no independence on the council as his loyalty is to special interests groups not District 6. He even switched party affiliation to get $5,000 from an interest group in Sacramento to run for office. He was caught committing fraud using an address outside of the district he was elected to represent, to have his son play football in north Stockton. His fraudulent actions cost the undefeated team to forfeit their entire season. His lack of ethics are unacceptable for someone in a position of leadership. District 6 and Stockton deserve better.

The printed names, signatures, and residence addresses of the proponents are as follows:

| NAME | ADDRESS | | SIGNATURE |
|---|---|---|---|
| 1. John Parker | 2126 S. Pilgrim Street | Stockton, CA 95206 | |
| 2. Cleophas Windell Ferguson Jr. | 2210 Prestwick Street | Stockton, CA 95206 | |
| 3. Clifford H. Weaver | 2226 S. American Street | Stockton, CA 95206 | |
| 4. Jessie Jackson | 2305 S. El Dorado Street Apt. 212 | Stockton, CA 95206 | |
| 5. Atlanta Williams | 2305 S. El Dorado Street Apt. 212 | Stockton, CA 95206 | |
| 6. Sylvia Gaines | 1526 Spring Street | Stockton, CA 95206 | |
| 7. Norman Thurman | 1533 Spring Street | Stockton, CA 95206 | |
| 8. Barbara Jean Jackson | 2230 S. Harrison Street | Stockton, CA 95206 | |
| 9. Charles M. Kilingham | 2305 S. El Dorado Street Apt. 8 | Stockton, CA 95206 | |
| 10. Stephen Adam Guyton Sr. | 2305 S. El Dorado Street | Stockton, CA 95206 | |

A copy of this notice and proof of service will be filed with the City Clerk.

Elections Code section 11023. (a) Within seven days after the filing of the notice of intention, the officer sought to be recalled may file with the elections official, or in the case of a state officer, the Secretary of State, an answer, in not more than 200 words, to the statement of the proponents. (b) If an answer is filed, the officer shall, within seven days after the filing of the notice of intention, also serve a copy of it, by personal delivery or by certified mail, on one of the proponents named in the notice of intention. (c) This answer shall be signed and shall be accompanied by the printed name and business or residence address of the officer sought to be recalled.

#1115231  4/19/2018

WHITE v. CLEGG, et al.
Case No. 2:19-cv-00913-JAM-EFB

**PROOF OF SERVICE**

STATE OF CALIFORNIA      )
                           )   ss.
COUNTY OF SAN JOAQUIN   )

**I, THE UNDERSIGNED, SAY:**

I am, and was at all times herein mentioned, a citizen of the United States and employed in the County of San Joaquin, State of California, over the age of eighteen (18) years, and not a party to the within action; that my business address is 44 N. San Joaquin Street, Suite 679, Stockton, California, 95202.  Facsimile number (209) 468-0315.

On June 12, 2019 I served the following document(s):

**DEFENDANT MELINDA DUBROFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MELINDA DUBROFF'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

☑    By US Mail. I am readily familiar with the office's practice of collecting and processing correspondence for mailing with the U.S. Postal Service and, after collection, it is deposited with the U.S. Postal Service with postage fully prepaid on the same day in the ordinary course of business.  I enclosed a true copy of the aforesaid documents(s) in a separate envelope for each of the person(s) named below, addressed as set forth immediately below the respective name(s), as follows:

**RALPH LEE WHITE**                 *Plaintiff in pro se*
**2201 E EIGHTH STREET**
**STOCKTON CA   95206**

**I DECLARE UNDER PENALTY OF PERJURY** that the foregoing is true and correct. **EXECUTED** at Stockton, California, on June 12, 2019.

                                         *Shannon M. Hughes*
                                        Shannon Hughes

Tools ▾   Links ▾   Q   ❮   ❯

Stockton Municipal Code, Charter, and Civil Service Rules

## THE CHARTER OF THE CITY OF STOCKTON

## ARTICLE IX INITIATIVE AND REFERENDUM ELECTION CODE GOVERNS

### SECTION 900. Provisions.

There is hereby reserved to the voters of the City the powers of the initiative and the referendum. The provisions of the Elections Code of the State of California, as they now exist or may hereafter be amended, governing the initiative and referendum in cities, shall apply to the use thereof in the City so far as they are not in conflict with the provisions of this Charter.

(Amended Election 10/12/71 effective 12/6/71; Amended Election 10/14/47 effective 3/3/48)

Tools ▾    Links ▾   **Q   ◀   ▶**

Stockton Municipal Code, Charter, and Civil Service Rules

## THE CHARTER OF THE CITY OF STOCKTON

## ARTICLE IX INITIATIVE AND REFERENDUM ELECTION CODE GOVERNS

## SECTION 901. Initiative Special Requirements.

Signatures on initiative petitions shall be secured and the petition filed with the City Clerk within ninety (90) days from the first publication or posting of the notice of intention to circulate the petition.

(Amended Election 10/12/71 effective 12/6/71)

Tools ▾    Links ▾    🔍    ❮    ❯

Stockton Municipal Code, Charter, and Civil Service Rules

THE CHARTER OF THE CITY OF STOCKTON

ARTICLE IX INITIATIVE AND REFERENDUM ELECTION CODE GOVERNS

## SECTION 902. Actions of City Council if Signatures at Least Ten Percent.

If the initiative petition is signed by voters of the City equal in number to at least ten percent (10%) of the total number of voters of the City according to the last official report of registration by the County Clerk of the County of San Joaquin to the Secretary of State of California, the City Council shall either:

(a)    Introduce the ordinance without alteration at the regular meeting at which it is presented and adopt the ordinance within fourteen (14) days after it is presented; or

(b)    Immediately order a special election, to be held within the time set forth in the Elections Code of the State of California, at which the ordinance, without alteration, shall be submitted to the voters of the City.

(Amended Election 03/04/03 effective 04-02-03; Amended Election 10/12/71 effective 12/6/71)

Tools ▾    Links ▾   Q   ◀   ▶

Stockton Municipal Code, Charter, and Civil Service Rules

## THE CHARTER OF THE CITY OF STOCKTON

## ARTICLE XIV THE CITY CLERK

### SECTION 1400. Duties.

---

The City Council shall appoint the City Clerk who shall serve at its pleasure. The Clerk shall appoint all other members of the department. It shall be the duty of the City Clerk to:

(a)   Attend all meetings of the Council either in person or by deputy, and be responsible for the recording and maintaining of a record of all the actions of the Council.

(b)   Be responsible for all books, papers, records, contracts, and archives belonging to the City, or to any department thereof, not in actual use by other officers or otherwise committed to their custody.

(c)   Keep all records of the Council and of the office of the City Clerk in such manner that the information contained therein will be readily accessible and open to the public as required by law until such time as any of the records may be destroyed or reproduced and the original thereof destroyed, in accordance with applicable law.

(d)   Be the custodian of the seal of the City.

(e)   Administer oaths or affirmations, take affidavits and depositions pertaining to the affairs of the business of the City and certify copies of the official records.

(f)   Have charge of all City elections.

(g)   Be responsible for the publication of all official advertising of the City.

(h)   Perform such other duties consistent with this Charter as may be required by action of the Council.

(Amended Election 10/12/71 effective 12/6/71; Amended Election 11/8/94 effective 5/22/95)


**\*   Historical Notes:**
Section 2\*\*: Repealed Election 11/8/94 effective 5/22/95.
Section 3\*\*: Amended Election 10/12/71 effective 12/6/71; Repealed Election 11/8/94 effective 5/22/95.
Section 4\*\*: Repealed Election 11/8/94 effective 5/22/95.
Section 5\*\*: Repealed Election 10/12/71 effective 12/6/71.
Section 6\*\*: Repealed Election 11/8/94 effective 5/22/95.
Section 7\*\*: Amended Election 11/4/86 effective 12/9/86; Repealed Election 11/8/94 effective 5/22/95.
\*\*  These section numbers refer to a numbering system that was in place prior to the Election of 11/8/94.

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

RALPH LEE WHITE
_____

Plaintiff(s)/Petitioner(s),

vs.

CASE NO. 2:19-CV-00913 JAM EFB PS
_____

CHRISTIAN CLEGG, et al.
_____

Defendant(s)/Respondents(s).

---

**IMPORTANT**
   **IF YOU CHOOSE TO CONSENT OR DECLINE TO CONSENT TO JURISDICTION OF A UNITED STATES MAGISTRATE JUDGE, CHECK AND SIGN THE APPROPRIATE SECTION OF THIS FORM AND RETURN IT TO THE CLERK'S OFFICE.**

---

☑   **CONSENT TO JURISDICTION OF**
**UNITED STATES MAGISTRATE JUDGE**

   In accordance with the provisions of Title 28, U.S.C. Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: June 13, 2019 _____   Signature: _____

Print Name: _____
[ ] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Counsel for * _____

---

✗   **DECLINE OF JURISDICTION OF**
**UNITED STATES MAGISTRATE JUDGE**

   Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: 6/26/19 _____   ✓ Signature: _____

Print Name: ROLPH L White
[ ] Plaintiff/Petitioner [ ] Defendant/Respondent
[ ] Counsel for * IN PRO PER

---

*If representing more than one party, counsel must indicate name of each party responding.